**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **MILDRED A. GARCIA, _et al.,_** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **3:09-cv-08033 JWS** |
| | ) | |
| **vs.** | ) | **ORDER AND OPINION** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **[Re: Motions at Dockets 44 and 54]** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**I.  MOTIONS PRESENTED**

At docket 44, defendant United States of America moves for summary judgment dismissing all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 56.  At docket 64, plaintiffs Mildred Garcia, _et al._, oppose the motion.  Defendant replies at docket 71.  At docket 54, plaintiffs move for partial summary judgment on liability and the issue of respondeat superior.  At docket 69, defendant opposes the motion.  Plaintiffs reply at docket 72.  Oral argument was not requested, and it would not assist the court.

## II.  BACKGROUND

The following background facts are undisputed.[1]  This action arises from a motor vehicle collision that occurred north of Chinle, Arizona, within the Navajo Nation Reservation on October 30, 2007.  The collision occurred at milepost 455.3 on U.S. 191, between Chinle and Many Farms, when a police vehicle driven by Officer Karl Etsitty went off the highway, striking and rolling over a vehicle parked in a pullout area just off the highway.  Plaintiff Mildred Garcia was in the parked vehicle and sustained serious injuries as a result of the collision.

At the time of the collision, Karl Etsitty, an enrolled member of the Navajo Nation, was a commissioned police officer with the Division of Public Safety, Navajo Nation Department of Law Enforcement.  He received his commission on January 12, 2007, and was assigned to the Chinle Police District.  Officer Etsitty's work assignment included patrolling the roads and highways around Chinle in a Navajo Nation police vehicle and responding to citizen complaints.  The Chinle Police District allowed Officer Etsitty to drive a police vehicle to his residence and keep it there between his scheduled police shifts.   Officer Etsitty was responsible for the use and maintenance of his assigned police vehicle.

On October 29, 2007, Officer Etsitty purchased an 18-pack of beer and a half-pint of rum.  Between the evening of October 29 and the time of the collision on October 30, Etsitty drank all of the beer and rum he had purchased.  At the time, Etsitty worked Shift 6, which consisted of four ten-hour shifts 9:00 p.m. to 7:00 a.m. from Wednesday

---

[1]The facts in this section are taken from the parties' statements of undisputed facts and the attached documents.

to Sunday. Although Officer Etsitty's next shift was scheduled to begin at 9:00 p.m. on October 31, 2007, Etsitty told an FBI agent who interviewed him two days after the collision that he thought he was going on shift on the night of October 30, so the afternoon of October 30 he cleaned out his police vehicle and fixed a knob on the vehicle to prepare for his shift.[2]

At about 2:45 p.m. on October 30, 2007, Officer Etsitty called Chinle police dispatcher Geraldine Holtsoi.  Officer Etsitty told dispatcher Holtsoi that a male neighbor with the last name of Towne had come to his residence and requested a property damage report on his basketball goal.  Etsitty told the dispatcher that he needed a log or case number for a property damage complaint about vandalism of the basketball goal. When Officer Etsitty asked the dispatcher if she was free to copy his Navajo Tribal Police vehicle number ("NT") and beginning mileage, she replied "no" and suggested he call back in.[3]  While Etsitty was on the phone, Holtsoi ran a warrant check on the purported complaining party and began an incident report in the department's computerized system with log number 05-07-035859 as "Damage Property Private."

During the phone call, Officer Etsitty told Holtsoi to close out the computerized report because he would take care of the narrative part of the report  later.  Dispatcher Holtsoi entered a "D" on the report form, indicating that an initial report had been made with no arrest, and that a further report would be done by the reporting officer.  During

---

[2]Doc. 55 at p. 5.

[3]Doc. 57-1 at p. 1.

the phone call, Officer Etsitty's voice sounded normal to Holtsoi; she did not think he was intoxicated.

At about 2:50 p.m., dispatcher Holtsoi received a call about a two-vehicle accident  involving a Navajo Police vehicle, with an injured police officer and a woman trapped in the other vehicle.  The roof of Ms. Garcia's vehicle was crushed in the collision.  Ms. Garcia sustained multiple fractures of the cervical spine and was removed from the vehicle by emergency personnel using the "jaws of life."  Officer Etsitty sustained a head injury in the collision.  Etsitty was dressed in a t-shirt, shorts, and shoes at the time of the collision.

Arizona Department of Public Safety ("ADPS") investigated the collision.  ADPS Officer Gerald Johnson arrived at the scene shortly after the collision.  Officer Johnson's police report states that during his initial contact with Etsitty at the accident site, Etsitty stated that he was the passenger and asked about his driver.[4]  Etsitty "had slurred speech and strong odor of intoxicating liquor from his breath."  Officer Johnson's police report further states:

> Officer Karl Etsitty called Chinle Police dispatcher by telephone and stated he was going to do a property damage[] report for his neighbors west of Many Farms on route 59.  He left from his resident [sic], which is on the west side of US-191 around milepost 453 and headed northbound.  At milepost 453.3, he went off the roadway on the right shoulder and back on the roadway, swerved clockwise and off the roadway. He slid sideways on the dirt then the vehicle rolled counter clockwise and continued rolling, the tan sedan was parked and the police vehicle rolled into the parked sedan, rolled over and stopped next to the fence line on it's side.[5]

_____

[4]Doc.46-1 at p. 4.

[5]*Id.*

-4-

Officer Etsitty was transported to Chinle Indian Health Services.  At the hospital, Etsitty told Officer Johnson that "he was 47, Chinle police code for possible DUI, drunk driving."  When asked how he got into an accident, Etsitty stated "he was avoiding a mutt, a dog on the roadway."[6]  Etsitty later admitted that he did not avoid a dog.  Officer Johnson arrested Officer Etsitty at the hospital for driving a motor vehicle under the influence of alcohol.

On November 1, 2007, FBI Agent Scott McMillion and Navajo Criminal Investigator Ivan Tsosie interviewed Etsitty.  In the interview, Etsitty stated that on the day of the incident, October 30, he thought he was going to start his shift that night so he cleaned out his police vehicle and repaired a knob to get the vehicle ready. [7]  Etsitty further stated that he started "to rev the unit" because he had noticed that "the unit had problems to it ... every now and then it would shake ... [and] sound like it was ready to go off...."[8]  Etsitty also said that he had called the dispatcher about a property damage report and that she pulled a new log number for him.  Etsitty further stated, "...basically, I had no intent of taking care of no reports or anything like that, I just basically wanted to take a drive with that unit and – 'cause I did notice it was shaking."[9]  When asked the purpose of the drive, Etsitty said that he wanted to take the vehicle for a test drive to

---

[6]*Id.* at p. 5.

[7]Doc. 49 at p. 12.

[8]*Id.* at pp. 12-13.

[9]*Id.* at p. 21.

see if it would "conk out."  Officer Etsitty further stated that he blacked out while he was driving.[10]

On November 6, 2007, Officer Etsitty was notified of his termination effective on November 21, 2007, for operating a tribal vehicle under the influence of alcohol.  Officer Etsitty wrote the Navajo Nation Chief of Police and requested an informal settlement of his termination.  After meeting with Etsitty, the Chief of Police accepted Etsitty's request for a "voluntary employment resignation instead of termination."[11]  Etsitty resigned on December 5, 2007.

Etsitty was indicted for and pleaded guilty to assault resulting in serious bodily injury, pursuant to 18 U.S.C. § 113(a)(6) and § 1153, a Class C felony offense.[12]  Etsitty was sentenced to 27 months imprisonment, followed by three years of supervised release.

On April 16, 2010, the United States deposed Etsitty at the Federal Correctional Facility in Florence, Colorado.  In his deposition, Etsitty stated that at the time of the collision, he was taking a test drive to check on the patrol vehicle's shaking and instrument problems.[13]  When asked if it was still possible that he was thinking about going to do a property damage report, Etsitty responded "I don't know."[14]  Etsitty further

---

[10]*Id.* at p. 25.

[11]Doc. 55-2 at pp. 8-9.

[12]Doc. 50 at pp. 11, 13.

[13]Doc. 46-1 at p. 40.

[14]*Id.*

testified that as a police officer with the Navajo Nation Police Department, he never took his police vehicle out for a "joyride," he only used it for job duties.[15]

The Navajo Nation Department of Law Enforcement operated the Chinle Police District under a Law Enforcement Patrol Contract with the United States pursuant to the Indian Self-Determination and Education Assistance Act.  The contract provides in pertinent part: "For purposes of Federal Tort Claims Act coverage, the Navajo Nation and its employees are deemed to be employees of the Federal government while performing work under the contract."[16]  The Statement of Work in the contract includes responding to citizen's complaints and providing patrol services on and off roadways within the service area.[17]

Navajo Division of Public Safety General Order 79-17 provides that departmental vehicles may be assigned "to individual personnel when such assignment will increase effectiveness."  General Order 79-17 further provides that "[a] employee with an assigned vehicle shall be held accountable for its use and maintenance, as is expected of all other employees allowed the use of a vehicle."[18]  General Order 79-08, entitled "Duty Status, Carrying Firearms and Off Duty Activities of Commissioned Officers," states in pertinent part:

> All commissioned members of the Navajo Division of Public Safety while on the reservation or in the areas described as "Indian Country" shall be considered subject to call at any time.

---

[15]*Id.* at p. 41.

[16]Doc. 50 at p. 39.

[17]*Id.* at p. 41.

[18]Doc. 56-2 at p. 1.

> This means that while not actively working a Commissioned officer is required to protect the public if he is witness to a crime that is in the process of being committed, render aide or assistance if a member of the public is in danger. This order protects the employees in the event that they render aide or take action in the areas such as civil liability, disability, etc.[19]

General Order 79-08 also provides, "Under no circumstances will off-duty members of the Navajo Division of Public Safety engage in law enforcement activities or render aide to the public when they have take[n] part in social functions that involve the use of alcoholic beverages." The Navajo Nation Motor Vehicle Operator's Handbook also prohibits the operation of any tribal vehicle while under the influence of alcoholic beverages.[20]

On March 4, 2009, Mildred Garcia and Fray Gray, individually and as parents of Jamelia Gray and Michael Gray, filed a complaint against the United States under the Federal Tort Claims Act ("FTCA") for damages due to negligence.[21]  Plaintiffs' complaint alleges claims of negligence and negligence per se (Count I), negligent hiring, training, supervision, and retention (Count II), negligent entrustment (Count III), and loss of consortium (Count IV).  As required by the FTCA, plaintiffs exhausted their administrative remedies prior to filing their complaint.[22]

---

[19]Doc. 50 at p. 50.

[20]Doc. 58-5 at p. 5.

[21]Doc. 1.

[22]28 U.S.C. § 2401(b).

### III.  SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to material fact.[23]  The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[24]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[25] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[26] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[27]

### IV.  DISCUSSION

Defendant moves for summary judgment dismissing all of plaintiffs' claims on the grounds that the court lacks jurisdiction over plaintiffs' claims under the FTCA and plaintiffs have failed to produce evidence to support their claims.  Defendant specifically argues that: 1) Etsitty was not performing work under the self-determination contract at

---

[23]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[24]*Id.* at 323-25.

[25]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[26]*Id.* at 255.

[27]*Id.* at 248-49.

the time of the collision; 2) under Arizona law, Etsitty was not acting within the scope of his employment as a police officer at the time of the allegedly tortious conduct; 3) plaintiffs' claims are barred by the FTCA's intentional tort exception, and 4) plaintiff's negligent hiring, training, supervision, retention, and entrustment claims are not supported by facts and are barred by the discretionary function exception to the FTCA. Plaintiffs oppose the motion for summary judgment, and cross-move for partial summary judgment "that as a matter of law Officer Karl Etsitty was acting within the scope of his employment when the Navajo Police vehicle he was driving collided with Mildred Garcia's car, and that the United States is liable for the crash."[28]

"The Indian Self-Determination and Education Assistance Act of 1975 ("ISDEAA"), Public Law 93-638, authorizes federal agencies to contract with Indian tribes to provide services on the reservation."[29]  "The purpose of the ISDEAA is to increase tribal participation in the management of programs and activities on the reservation."[30]  In order to "limit the liability of tribes that agreed to these arrangements, Congress [] provided that the United States would subject itself to suit under the Federal Tort Claims Act ("FTCA") for torts of tribal employees hired and acting pursuant to such self-determination contracts under the ISDEAA."[31]  "The FTCA provides a waiver of the United States government's sovereign immunity for tort claims arising out of the conduct

---

[28]Doc. 54 at p. 1.

[29]*Snyder v. Navajo Nation*, 382 F.3d 892, 896 (9th Cir. 2004).

[30]*Snyder*, 382 F.3d at 896-897.

[31]*Id.* at 897.

of government employees acting within the scope of their employment."[32]  "The FTCA provides that the government 'shall be liable ... in the same manner and to the same extent as a private individual under like circumstances....'"[33]

It is undisputed that the Navajo Nation contracted with the Bureau of Indian Affairs ("BIA") to provide law enforcement on the Navajo Reservation under a § 638 Law Enforcement Patrol Contract ("the Contract") and that Etsitty was hired to perform work under the Contract.  The Contract provides, "For purposes of [FTCA] coverage, the Navajo Nation and its employees are deemed to be employees of the Federal government while performing work under the contract."[34] Consequently, the United States agreed to assume liability under for the FTCA for tribal officers' torts, to the extent that such officers were performing work under the law enforcement contract.[35]

Based on the facts of this case, if Etsitty was acting within the scope of his employment, he was also performing work under the law enforcement contract. Accordingly, the "lynchpin question" is whether Etsitty was acting within the scope of his employment at the time of the allegedly tortious act.[36]  In determining whether a government employee was acting within the scope of employment, the court applies

---

[32]*Adams v. United States*, 429 F.3d 1049, 1051 (9th Cir. 2005) (citing 28 U.S.C. § 1346(b)(1)).

[33]*Garcia v. United States*, 826 F.2d 806, 809 (9th Cir5. 1987) (quoting 28 U.S.C. § 2674).

[34]Doc. 50 at p. 39.

[35]*Snyder*, 382 F.3d at 897.

[36]*Kashin v. Kent*, 457 F.3d 1033, 1037 (9th Cir. 2006).

"the law of the place where the act or omission occurred."[37]  Generally, this law is the

respondeat superior law of the state where the alleged tort occurred.[38]

Arizona law concerning the scope of employment is based on the Restatement

(Second) of Agency.[39]  "Under Arizona law, '[a]n employer is vicariously liable for the

negligent or tortious acts of its employee acting within the scope and course of

employment.'"[40]  "An employee's conduct is within the scope and course of employment

'only if (a) it is the kind he is employed to perform; (b) it occurs substantially within the

authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to

serve the [employer].'"[41]  "The 'concept [of] scope of employment has long been tied to

the employer's right to control the employee's activity at the time of his tortious

conduct.'"[42]

"'[A]n employee is acting within the scope of ... employment while he is doing any

reasonable thing which his employment expressly or impliedly authorizes him to do or

which may reasonably be said to have been contemplated by that employment as

---

[37]*Kashin*, 457 F.3d at 1037 (quoting 28 U.S.C. § 1346(b)(1)).

[38]*Id.*

[39]Restatement § 228 states that an employee's conduct is within the scope of
employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within
the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to
serve the master."

[40]*McCloud v. Kimbro*, 228 P.3d 113, 115 (Ariz.App. 2010) (quoting *Baker ex rel. Hall
Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 5 P.3d 249, 254 (Ariz. App. 2000)).

[41]*McCloud,* 228 P.3d at 115 (quoting *Anderson v. Gobea*, 501 P.2d 453, 456 (Ariz.
1972)).

[42]*Id.* (quoting *Robarge v. Bechtel Power Corp.*, 640 P.2d 211, 213 (Ariz. App. 1982)).

necessarily or probably incidental to the employment.'"[43]  "Whether an employee's tort is within the scope of employment is generally a question of fact."[44]  "When 'the material facts relevant to scope of employment are undisputed, the question can be decided as a matter of law.'"[45]

Here, the undisputed facts show that shortly before the collision Etsitty, who was off duty and intoxicated, called the Chinle police dispatcher and said that a male neighbor had come to his residence and requested a property damage report on his basketball goal.  Etsitty told the dispatcher he needed a log or case number for a property damage complaint.  Etsitty asked the dispatcher if she was free to copy his tribal police vehicle number and beginning mileage and she replied no and suggested he "call back in."  The dispatcher began an incident report with log number 05-07-035859 as "Damage Property Private."  Shortly thereafter, Etsitty drove north on Highway 191 in his assigned police vehicle.  At about mile 455.3, Etsitty's police vehicle went off the highway at a high speed, rolled over, and struck Ms. Garcia's vehicle, seriously injuring Ms. Garcia.

It is also undisputed that when Etsitty was interviewed by an FBI agent two days after the collision, Etsitty stated that on the day the collision occurred, he thought he was going to work at 9:00 p.m. so he cleaned his vehicle and fixed a broken knob to get ready for his shift, and then he called the dispatcher and got a log number.  Etsitty

---

[43]*Id.* (quoting *Ray Korte Chevrolet v. Simmons*, 571 P.2d 699, 704 (Ariz. App. 1977)).

[44]*Smith v. American Exp. Travel Related Services Co., Inc.,* 876 P.2d 1166, 1171 (Ariz. App. 1994).

[45]*McCloud*, 228 P.3d at 115 (quoting *Smithey v. Hansberger*, 938 P.2d 498, 501 (Ariz. App. 1996)).

further stated that he had no intent of taking care of a report, he just wanted to take a test drive in his police vehicle because he noticed the vehicle was "shaking" and sounded like it was ready to "conk out."

Plaintiffs contend that Etsitty's conduct at the time of the allegedly tortious act was the kind he is employed to perform because he was driving his police vehicle when the collision occurred and "he was doing so for either one or both of two employment related purposes: responding to a citizen's complaint of property damage ... or taking the vehicle for a test drive in preparation for his upcoming shift."[46]  Plaintiffs argue that there are no material questions of disputed fact as to the first prong because it is undisputed that Etsitty's job responsibilities as a police officer included both responding to citizen's complaints and maintaining his police vehicle.

Defendant argues that this prong cannot be decided on summary judgment because the reason Etsitty was driving his patrol vehicle at the time of the collision is disputed material question of fact.  Defendant states that while Etsitty initially suggested he was going to do a property damage report, he stated in his interview with the FBI agent that he did not intend to follow up on the report but wanted to take his patrol vehicle for a test drive before his shift.  Defendant contends the court would have to make a credibility determination in order to resolve this issue.

Defendant's argument is unavailing because whether Etsitty was following up on a property damage report or taking his police vehicle for a test drive before his purported shift, either action is the kind of conduct he was employed to perform.  In

---

[46]Doc. 54 at p. 6.

addition, defendant has not produced probative evidence of any other reason Etsitty called in to the dispatcher to get a log number and then drove his patrol vehicle. Moreover, the first two prongs of the three-prong test is focused on Etsitty's actual conduct rather than his subjective intent.[47]  Etsitty's conduct shows that he was off duty, but called in to the dispatcher, got a log number, and asked if she had time to get his tribal vehicle number and mileage, which, based on the undisputed evidence in the record, comports with the actions a Chinle police officer would take if he or she were going on duty outside of a scheduled shift.

The undisputed evidence also shows that dispatcher Holtsoi gave Etsitty a log number, started an incident report, and understood that Etsitty was going on duty to take the property damage report.[48]  The incident report completed by the Arizona Department of Public Safety Officer who investigated the collision also stated that "Officer Karl Etsitty called Chinle Police dispatcher by telephone and stated he was going to do a property damage[] report for his neighbors west of Many Farms on route 59."[49]  In addition, the evidence indicates that the Chinle police department had the right to control Etsitty at the time of the collision.  Etsitty was driving a police vehicle and had called the police dispatcher to log in a case number before driving.

Defendant's argument that Etsitty's conduct cannot be within the scope of employment because applicable rules forbade officers from driving while intoxicated is

---

[47]*Ortiz v. Clinton*, 928 P.2d 718, 724 n.2 (Ariz.  App. 1996) ("Whether a person acted in the scope of employment is not a question of subjective intent, but instead is determined by an objective test.")

[48]Doc. 56-3 at p. 4.

[49]Doc. 46-1 at p. 4.

also unpersuasive.  Under Arizona law, "[a] wrongful act committed by an employee while acting within his employer's business does not take the employee out of the scope of employment, even if the employer has expressly forbidden the act."[50]  "The question is whether at the time the injury occurred the employee was performing a service in furtherance of his employer's business, not whether it was done in a manner exactly as the employer prescribed."[51]  At the time the collision occurred, Etsitty was either responding to a citizen complaint or maintaining his assigned police vehicle, both of which were services in furtherance of the police department's "business."

As to the second prong, it is undisputed that Etsitty's allegedly tortious conduct occurred within authorized space limits.  At the time of the collision, Etsitty was driving his assigned tribal police vehicle within the territorial boundaries of his patrol.  Whether his conduct occurred substantially within authorized time limits is a more complicated issue.  Defendant contends that Etsitty's conduct was not within authorized time limits because he was off duty and was not scheduled to work for another 30 hours at the time the collision occurred.  Plaintiffs argue that "although the collision occurred outside of Officer Etsitty's scheduled shift, the time requirement is met in this case, because he went on duty and performed job-related responsibilities."[52]  The court concurs.

"During a period within which a servant is privileged but not required to perform acts for his master the master is responsible if, but only if, the understanding is that the

---

[50]*Ortiz*, 928 P.2d at 723.  *See also State of Arizona v. Schallock*, 941 P.2d 1275, 1283 (Ariz.  App. 1997).

[51]*Id.*

[52]Doc. 54 at p. 7.

master, if present, would have control over the doing of the act in question."[53]  As
discussed above, the undisputed evidence shows that prior to driving his assigned
police vehicle on October 30, Etsitty called in to the police dispatcher, got a log number
to do a property damage report, and asked if the dispatcher had time to get his tribal
vehicle number and mileage, which is consistent with the actions of a Chinle police
officer going on duty outside a scheduled shift.  The undisputed evidence also shows
that the police dispatcher understood that Etsitty was going on duty to take a property
damage report.  It is also undisputed that as an employee with an assigned vehicle,
Etsitty was accountable for its use and maintenance.  Consequently, Etsitty was within
the time limits of temporarily going on duty to either follow up on a citizen complaint or
to test drive his vehicle.[54]  As such, Etsitty was privileged to perform work acts for the
Chinle police department at the time of the collision, and by calling in for a log number
and to report his vehicle number, was subject to the Chinle police department's control.
Based on the undisputed evidence the court concludes that Etsitty's tortious conduct
was substantially within authorized time and space limits.

Next, the court considers whether Etsitty's conduct was motivated at least in part
by purpose to serve his employer, rather than solely to serve personal motives.  The
undisputed evidence shows that Etsitty was driving his vehicle for the purpose of
investigating a property report or test driving his vehicle in preparation for his shift;
either reason is actuated at least in part by a purpose to serve his employer.  Defendant

_____

[53]Restatement (Second) of Agency § 233 (1958).

[54]*McCloud v. Kimbro*, 228 P.3d 113, 125 (Ariz. App. 2010).

offers no evidence that Etsitty was driving the patrol vehicle for any other purpose, or solely for his own benefit.  To the contrary, the undisputed evidence shows that Etsitty never drove his police vehicle for personal reasons.  Defendant offers no evidence to suggest that Etsitty was not acting at least in part with the purpose of serving his employer.

Defendant next moves to dismiss plaintiffs' claims for lack of subject matter jurisdiction under the FTCA on the grounds that plaintiffs' claims are barred by the "intentional tort exception" to the FTCA.[55]  "Under § 2680(h), the United States retain its immunity from suit for certain enumerated intentional torts," including assault or battery.[56]  Defendant contends that because Etsitty pled guilty to assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6) and 1153(a), plaintiffs' claims arise out of an assault and are barred under § 2680(h).  Defendant's argument is unpersuasive.

Under Arizona law, "[a] person commits the tort of assault if he acts with intent to cause another harmful or offensive contact or apprehension thereof, and the other person apprehends imminent contact."[57]  By contrast, the criminal assault statute to which Etsitty pled guilty permits proof of a lesser state of mind.  "Under federal law, assault resulting in serious bodily harm is a general intent crime which does not require

---

[55]28 U.S.C. § 2680(h) provides in part that § 1346(b) of the FTCA shall not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel slander, misrepresentation, deceit, or interference with contract rights."

[56]*Sheehan v. United States*, 896 F.2d 1168, 1169 (9th Cir. 1990).

[57]*Garcia*, 826 F.2d at 810 n.9.

proof of specific intent to injure the victim."[58]  To have committed assault under 18 U.S.C. § 113(a)(6), Etsitty need not have intended to injure Garcia or anyone else when he drove under the influence; rather, his conduct constituted assault under § 113(a)(6) if he drove under the influence voluntarily with reckless disregard for the possibility of injury to others.[59]  A guilty plea to § 113(a)(6), therefore, does not establish the specific intent required for the intentional tort of assault.  Accordingly, plaintiffs' claims, all of which sound in negligence, are not barred by the intentional tort exception.  Because the court concludes that the intentional tort exception does not apply to plaintiffs' claims, the court need not determine whether Etsitty had a commission as a federal "investigative or law enforcement officer" so as to exempt plaintiffs' claims under the intentional tort exception under 28 U.S.C. § 2680(h).

Defendant next argues it is entitled to summary judgment on plaintiffs negligent hiring, training, supervision, retention, and entrustment claims because plaintiffs' claims are not supported by facts and are barred by the discretionary function exception to the FTCA.  Plaintiffs concede that there is insufficient evidence to support their claims of negligent hiring, retention, and entrustment, and do not oppose the dismissal of these claims.  Accordingly, plaintiffs' negligent hiring and retention claims (Count II), and claim for negligent entrustment are dismissed (Count III).

In support of their negligent training and supervision claims, plaintiffs' complaint alleges that "officials and officers of the Navajo Nation Division of Public Safety

---

[58]*United States v. McInnis*, 976 F.2d 1226, 1233 (9th Cir. 1992).

[59]*McInnis*, 976 F.2d at 1234.

-19-

knowingly and negligently allowed Karl Etsitty to have access to police vehicles ... when it knew or should have known that [Etsitty] posed an unreasonable risk to the safety of the public, particularly arising from his habit of alcohol abuse."[60]  In opposition to defendant's motion for summary judgment, plaintiffs have failed to produce any evidence showing that Etsitty had a history of alcohol abuse or of posing an unreasonable risk to public safety, or that Etsitty's supervisors were aware of any action by Etsitty that called into question his fitness for driving police vehicles.  Moreover, contrary to plaintiffs' argument that defendant has prevented proper discovery on these two claims, the record shows that defendant has produced Etsitty's official personnel file and that plaintiffs have deposed twenty witnesses, including most of the people who worked with or supervised Etsitty during his employment as a Chinle police officer.

Defendant further argues that even if plaintiff produced sufficient evidence in support of their claim, plaintiffs' negligent training and supervision claims fall under the discretionary function exception to the FTCA.[61]  "Federal courts do not have subject matter jurisdiction over tort actions based on federal defendants' performance of discretionary functions."[62]  "Whether a particular activity is a discretionary function is a question of law."[63]  The Ninth Circuit has held that the supervision and training of

---

[60]Doc. 1 at p. 9.

[61]28 U.S.C. § 2680(a) provides that the United States is not liable for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

[62]*Garcia*, 826 F.2d at 809.

[63]*Id.*

employees are discretionary acts, "which fall squarely within the discretionary function exception."[64] For the above reasons, defendant is entitled to summary judgment dismissing plaintiffs' negligent training and supervision claims.

## V.  CONCLUSION

For the reasons set out above, plaintiffs' motion for partial summary judgment is **GRANTED** insofar as it seeks a ruling that Etsitty was acting within the scope of his employment at the time of the collision and that the United States is liable for his conduct.  It is **FURTHER ORDERED** that defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** as follows: 1) defendant's motion is **GRANTED** as to plaintiffs' negligent hiring, training, supervision, retention, and entrustment claims, and they are **DISMISSED**, and 2) defendant's motion is **DENIED** as to plaintiffs' negligence, negligence per se, and loss of consortium claims.

DATED this 26th day of January 2011.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[64]*Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (quoting *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000))

-21-